UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

PAUL CHAN, et al.,

        Defendants.

CASE NO. CR. 96-350 WBS

ORDER RE: DEFENDANT'S MOTION TO SUPPRESS WIRE INTERCEPTS

----oo0oo----

        Defendant Paul Chan moves to suppress wire intercepts of phone line 916-984-9510 obtained pursuant to court orders. Defendants Mady Chan, Linda Chan, and Huy Chi Luong join in Paul Chan's motion and further challenge the wire intercepts of phone lines 916-685-4360 and 916-212-8978.

I.    Factual and Procedural Background

        The following factual findings are taken from United States v. Hoang Ai Le, 255 F. Supp. 2d 1132, 1139 (E.D. Cal. 2003) and United States v. John That Luong, No. 96-094, slip op., at 12 (N.D. Cal. Jan. 23, 1998), except where otherwise indicated by citation. The wiretap investigation in this case began on

August 5, 1995 and continued until April 8, 1996.  On January 19, 1996, this court issued an order authorizing the interception of calls to and from telephone number 916-984-9510.  The named interceptees on that line included John That Luong, Mady Chan, and other individuals, but did not include Paul Chan.  The authorization issued by this court was based on the application of the United States and a 76 page affidavit submitted by FBI Special Agent Steven D. Dupre.  On February 20, 1996, and March 20, 1996, this court issued orders extending the wire intercepts on line 916-984-9510.  The March 20 extension was based on a 58 page affidavit submitted by Special Agent Dupre, which included specific allegations that there was probable cause to believe that Paul Chan had committed offenses against the United States.

On February 21, 1996, this court authorized wire intercepts on phone lines 916-685-4360 and 916-212-8978.  The named interceptees included John That Luong, Mady Chan, and Hoang Ai Le.  This authorization was based on an application filed by the government and the 77 page affidavit of Special Agent Dupre.  This application was extended on March 26, 1996.

II.  Discussion

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2520, authorizes government interception of wire, electronic, and oral communications (i.e., electronic surveillance) under certain conditions.  However, before the government can commence such surveillance, "a judge must 'determine that ordinary investigative techniques employing a normal amount of resources have failed to make the case within a reasonable amount of time.'"  United States v. Bennett, 219

2

1  F.3d 1117, 1122 (9th Cir. 2000) (quoting <u>United States v.
2  Spagnuolo</u>, 549 F.2d 705, 711 (9th Cir. 1977)).  To satisfy this
3  requirement, the government must submit an affidavit providing a
4  factual background demonstrating that wiretapping is necessary
5  because typical investigative procedures are likely to be
6  ineffectual in the particular case.  <u>United States v. Brone</u>, 792
7  F.2d 1504, 1506 (9th Cir. 1986).

8        This "necessity requirement" is interpreted
9  practically, and "the government need not exhaust every
10 conceivable investigative technique in order to show necessity."
11 <u>Id.</u> (quoting <u>United States v. Torres</u>, 908 F.2d 1417, 1422 (9th
12 Cir. 1990)).  "[M]ere attainment of some degree of success during
13 law enforcement's use of traditional investigative methods does
14 not alone serve to extinguish the need for a wiretap."  <u>United
15 States v. Bennett</u>, 219 F.3d 1117, 1122 (S.D. Cal. 2000).
16 Consequently, wiretapping may be necessary simply because it
17 provides the government with the ability to "develop an effective
18 case."  <u>Brone</u>, 792 F.2d at 1506.

19       When deciding whether to authorize a wiretap, a judge
20 has "considerable discretion."  <u>Id.</u>  Accordingly, a reviewing
21 court must determine whether the issuing court abused its
22 discretion in finding that the necessity requirement for a
23 wiretap was met.  <u>United States v. Shryock</u>, 342 F.3d 948, 976
24 (9th Cir. 2003).  A court should uphold a wiretap, if "[l]ooking
25 only to the four corners of the wiretap application . . . there
26 is a substantial basis for these [statutorily-required] findings
27 of probable cause."  <u>United States v. Meling</u>, 47 F.3d 1546, 1552
28 (9th Cir. 1995).

Defendant Paul Chan argues that (1) the court did not expressly authorize the interception of conversations on phone number 916-984-9510 by family members unnamed in the wiretap application and, in the alternative, if a wiretap was authorized, the government made an insufficient showing of necessity with regard to the deficiencies of traditional investigative methods; and (2) the government did not establish necessity for wire intercepts with respect to charges of money laundering.[1]

In their motion, defendants Mady Chan, Huy Chi Luong, and Linda Chan similarly argue that the government failed to establish requisite necessity for the John That Luong wiretap of phone number 916-984-9510.[2] Additionally, these defendants challenge the wiretaps of phone lines 916-685-4360 and 916-212-8978. They argue that in its original February 21 application for wire intercepts for phone lines 916-685-4360 and 916-212-8978, the government significantly misstated and omitted information concerning surveillance and informants; that requisite necessity for that wiretap application was also not established because the investigative goals were so broad as to render the statute a nullity; that the government improperly presented evidence from the wiretaps to the grand jury without prior court authorization; and finally, that the court should

---

[1] Defendants Bao Qin Chen, John That Luong, Danny Hung Luong, Linda Chan, Jeanette Hong, Mady Chan, and Huy Chi Luong also join in Paul Chan's motion.

[2] Additionally, defendants John That Luong, Paul Chan, and Jeanette Hong join in this motion. Defendant John That Luong previously joined in a motion by defendant Hoang Ai Le to suppress evidence from wiretaps, which was decided by the court in 2003. Hoang Ai Le, 255 F. Supp. 2d at 1139.

4

reconsider its prior ruling that Huy Chi Luong is collaterally estopped from challenging the wiretaps. Because of the substantial overlap of legal and factual issues presented by these defendants, the court considers both motions herein.

    A.    <u>Paul Chan</u>

Defendant Paul Chan argues that the government did not establish the requisite independent necessity for intercepting his phone conversations on line 916-984-9510. Defendant cites <u>United States v. Santora</u>, 600 F.2d 1317 (9th Cir. 1979), <u>Brone</u>, 792 F.2d 1504, and <u>United States v. Abascal</u>, 564 F.2d 821, 826 (9th Cir. 1977) for the proposition that the government is required to demonstrate necessity in each instance where they desire to expand the wiretap authorization to cover new crimes or new alleged co-conspirators. These cases, however, stand for the proposition that the government may not simply transfer a showing of necessity that merited a court authorization for a wire intercept of one conspirator's phone to <u>another</u> <u>phone</u> belonging to another co-conspirator. <u>Santora</u>, 600 F.2d at 1321 ("But this does not mean that once the Government has established the inadequacy of investigative alternatives relating to certain suspects, it may then dispense with the required showing when applying to tap <u>the telephones of other conspirators</u>.") (emphasis added) (amended on other grounds); <u>Brone</u>, 792 F.2d at 1507 ("The government may not dispense with the statutorily mandated showing of necessity to obtain a wiretap of [one member of the conspiracy's] telephone, despite the validity of the wiretap of his coconspirators' telephone."); <u>Abascal</u>, 564 F.2d at 826 ("The wiretap statute requires that [the government's showing of

necessity] be satisfied with regard to each <u>separate wiretap</u>.") (emphasis added).

        The cases cited by defendant are therefore plainly distinguishable from the instant case.  The phone line in question, 916-984-9510, was not a separate wiretap, but a line that was already subject to wiretapping by court order (Jan. 19, 1996 Order Authorizing the Interception of Wire Communications), and Paul Chan was merely one of the people who engaged in conversations on that phone.[3]  This court authorized wiretapping to gather information regarding violations of drug conspiracy laws and multi-state computer chip robberies, including for the purposes of "reveal[ing] fully the manner in which the herein named subjects and unnamed but described associates, conspirators and confederates, as yet unknown, are committing the offenses . . . ."  (<u>Id.</u> at 4.)

        If communications on phone line 916-984-9510 by defendant Paul Chan or other family members were not authorized by the court, the government would have been required take steps to minimize its interception of such communications.  <u>See</u> 18 U.S.C. § 2518(5).  However, the court's January 19, 1996 order expressly allowed government agents to determine the activities of defendant Luong and his associates, conspirators, and

---

[3] To the extent defendant is arguing that the warrant was deficient for failing to mention Paul Chan as an interceptee, the fact that Paul Chan was not named in the initial application for a wiretap does not threaten the constitutionality of the warrant; the particularity requirement for a warrant is met when a wiretap application specifies the phone line to be tapped and the particular communications to be seized.  <u>United States v. Donovan</u>, 429 U.S. 413, 427 n.15 (1977) ("It is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named.").

6

confederates, and specifically identified as relevant conversations about "assets being acquired by John That Luong and his associates through the sale of drugs and commission of other criminal activities." (Jan. 19, 1996 Dupre Affadavit in Support of Application for Order Authorizing the Interception of Wire Communications at 61.) The conversations that defendant Paul Chan claims should not have been listened to were clearly contemplated in the court's order.

Moreover, because the nature of an investigation of a large-scale conspiracy changes over time, "judicial analysis of the minimization requirement must take note of the ever-changing character of the investigation." United States v. James, 494 F.2d 1007, 1020 (D.D.C. 1974). "If the fruits of the tap in its early stages reveal a pattern of criminal conduct unknown to the government at the time of the initiation of the tap, then an expanded policy of interception (within the confines of the court order) may be justified." Id. at 1020-21; see also United States v. Killingsworth, 117 F.3d 1159, 1165 (10th Cir. 1997). The Supreme Court has noted that minimization of the intrusion by wiretap under § 2815(5) is less important when a wiretap is directed at what may be a large scale conspiracy. Scott v. United States, 436 U.S. 128, 140-41 (1978). Here, the wiretap was oriented toward gathering evidence of a wide-ranging conspiracy involving money laundering, and therefore the wiretap authorized "more widespread surveillance" than even its terms might suggest. See id. Therefore, because the acquisition of assets by Paul Chan and other people living with John That Luong furthered the goal of wiretapping authorized by the court, the

7

intercepting of Paul Chan's conversations was justified.

Alternatively, defendant Paul Chan argues that necessity was not met when his conversations were recorded because there were other approaches the government could have taken to obtain information about his acquisition of assets. (Def.'s Mot. Suppress Wire Intercepts 3.) As previously discussed, because the authorization expanded to meet the needs of agents monitoring a large-scale conspiracy and the wiretap at issue was authorized for the number from which Paul Chan's calls were made, the government did not need to establish independent necessity for Paul Chan's conversations. Therefore, the question becomes whether necessity for the wiretap was established at the outset of each application authorizing a wiretap on phone line 916-984-9510.

The government must submit an affidavit that sets out a factual background to show that wiretapping is necessary because typical investigative procedures are likely to be ineffectual in the particular case; as long as the government gains the ability to "develop an effective case," the necessity standard is likely met. Brone, 792 F.2d at 1506. Here, the government's affidavits laid out the deficiencies of traditional investigative techniques, i.e., that some confidential sources were unwilling to testify, were unavailable for further interviews, were unaware of the full scope of the conspiracy, and/or could not help the government identify the person who supplied a co-conspirator with heroin. Hoang Ai Le, 255 F. Supp. 2d at 1139. There were additional problems with physical surveillance, sting operations, and the like that the government detailed and that this court

8

previously found sufficient to show necessity for wiretapping in its order denying defendant Hoang Ai Le's motion to suppress. Id. at 1139. Therefore the court's decision to authorize wiretaps based on the government's showing of necessity was not clearly erroneous.

Defendant Paul Chan's final argument, that independent necessity was not shown for wiretapping for information about money laundering offenses, also lacks merit. The government is required to submit an additional application for interceptions that "relate to offenses other than those specified in the order of authorization and approval." 18 U.S.C. § 2517(5). Where new criminal activity is interwoven with criminal activity authorized by the original court order, however, independent necessity need not be established to gather evidence on the new, but interwoven, crime. See Bennett, 219 F.3d at 1123 (finding that a wiretap authorization related to a drug operation "was sufficient to encompass [a] murder-for-hire plot" when that plot was "interwoven" with the larger criminal operation); Petti, 973 F.2d 1441, 1446 (9th Cir. 1992) (concluding that "the facts that justified wiretapping the phones that [the defendant] used in an effort to obtain control of the gambling enterprise justified tapping the same phones when they were used to further the scheme to launder drug money"). In sum, the government did not have to establish independent necessity to intercept conversations involving Paul Chen or money laundering on phone line 916-984-9510. The court's authorization of wire intercepts on that line was not clearly erroneous and justified the interception of conversations about interwoven criminal activity. Therefore,

1  Paul Chan's motion to suppress will be denied.

2      B. <u>Mady Chan, Linda Chan, and Huy Chi Luong</u>

3          First, defendants Mady Chan, Linda Chan, and Huy Chi
4  Luong ("defendants") argue that the application for the John
5  Luong Wiretap Order of January 19, along with the applications
6  for extensions, insufficiently established requisite necessity by
7  claiming that their informants were not able to further the
8  investigation.  More specifically, defendants contend that the
9  government only explained why one particular informant was not of
10 further use to the investigation, and that the deficiencies of
11 this one informant do not sufficiently show that the government
12 was unable to rely on traditional investigative techniques.

13         Special Agent Dupre's affidavit included several
14 statements explaining why the government could not rely on
15 informants to meet the needs of their investigation. First,
16 Dupre stated that "[n]o confidential sources or undercover agents
17 are currently in a position to provide information regarding JOHN
18 THAT LUONG or his associates or their involvement in criminal
19 activities, including computer chip robberies." <u>John That Luong</u>,
20 No. 96-094, slip op., at 12.  Dupre also stated that no
21 confidential informants were able to help an undercover agent
22 infiltrate Luong's organization. <u>Id.</u>  Furthermore, Dupre's
23 affidavit incorporated by reference prior wiretap affidavits
24 submitted in the Northern District of California, which carefully
25 delineated the government's efforts to use their confidential
26 informants to uncover information. <u>Id.</u>  In particular, the
27 government's ability to use confidential informants was
28 compromised by the fact that, through "authorized electronic

interceptions," they had uncovered threats made by Luong and his associates "to kill suspected informants and intimidate potential witnesses." Id.  Thus, the government did establish necessity for wire intercepts by submitting affidavits that set out a factual background that informants were likely to be ineffectual. See Brone, 792 F.2d at 1506.

Defendants also argue that the "intercept application lacked sufficient information to show that traditional investigative techniques [such as the use of controlled buys and search warrants] would not have worked." (Def. Mady Chan's Mot. to Suppress Wiretap Evidence 7-8).  Again, the government did not need to demonstrate that traditional investigative techniques would not have any use whatsoever in order to establish requisite necessity.  Wiretapping may be necessary merely if it provides the government with the ability to "develop an effective case." Brone, 792 F.2d at 1506.

Although controlled buys and search warrants had proven useful to the government's investigation in the past, eventually, the usefulness of these techniques waned.  Controlled buys, or "stings", had not helped the government arrest mid-level or higher-level members of the conspiracy. John That Luong, No. 96-094, slip op., at 12.  Further, Special Agent Dupre stated that search warrants were problematic because the government did not know where the bulk of the contraband was stored, and the use of search warrants would alert suspects to the fact that an investigation was ongoing. Id.  Thus, the government met its burden of showing the difficulties and danger of traditional investigative methods and the need for wire intercepts in order

11

to build an effective case.

Defendants next contend that the government's application for the February 21 wiretap order did not establish requisite necessity, as it simply added the names Mady Chan and Huy Chi Luong to the part of the affidavit that addressed necessity. The government must "establish necessity every time it seeks a wiretap." United States v. Blackmon, 273 F.3d 1204, 1209 (9th Cir. 2001); United States v. Carniero, 861 F.2d 1171, 1181 (9th Cir. 1988). However, defendants' argument is factually incorrect. The government did not merely add Mady Chan and Huy Chi Luong's names to a necessity section formulated for a different defendant.[4] Rather, Special Agent Dupre specifically noted that there were no confidential sources or undercover agents in a position to provide information about Mady Chan or Huy Chi Luong, that pen registers placed on their telephones did not satisfy the investigation goals, and that their homes were particularly ill-suited to either surveillance or the installation of fixed-position pole cameras. Additionally, the affidavit included statements from Huy Chi Luong indicating that he was aware of being followed, which suggested that it would be difficult to conduct surveillance of him. John That Luong also had conversations with both Huy Chi Luong and Mady Chan about the many members of the organization who had recently been arrested.

---

[4] Defendant Mady Chan also argues that boilerplate averments are made in the affidavit. Although some of Special Agent Dupre's statements may be boilerplate, the application details the necessity to intercept the communications of two members of a large conspiracy in 77 pages. Moreover, it is unsurprising that some of the statements are not wholly new, but such an allegation, without more, will not disturb the court's finding of necessity.

12

Thus, Dupre's affidavit contained specific allegations with respect to the necessity for wiretapping the phone lines belonging to Mady Chan and Huy Chi Luong.  Furthermore, one factor that weighs heavily in favor of a finding of necessity was present here: there was a connection between these defendants and John That Luong, who was suspicious that he was under surveillance.  Brone, 792 F.2d at 1507 (finding that a suspect's "connection with conspirators who are themselves so wary that a wiretap is necessary in order to investigate their criminal activities may be a factor that weighs in favor of authorizing the tap").  Therefore, the court concludes that the wire intercepts of Mady Chan and Huy Chi Luong were based upon a sufficient showing of necessity.

Defendants also argue that the government's application contained significant misstatements regarding surveillance and informants, thus undermining claims of necessity.  Defendants contend that because the government elsewhere indicated that "physical surveillance had confirmed that [Huy Chi Luong] continued to meet persons at his residence and elsewhere," surveillance was a traditional method of investigation available to the government.  As noted above, however, Huy Chi Luong had become wary of surveillance and was aware of the possibility of being followed, which suggests that even if surveillance had been possible in the past, it was becoming increasingly difficult.  Furthermore, although defendants chide the government for not providing evidence that they made an attempt to conduct surveillance on Mady Chan's home, other than a "single spot check," Special Agent Dupre noted that Mady Chan's home was

13

particularly ill-suited to either surveillance or the installation of fixed-position pole cameras.

Similarly, defendants argue that the section of the wiretap application regarding informants contained several misstatements and omissions because the government knew of at least one cooperating witness, Charlie Reth. Defendants contend that Reth gave a great deal of information to the government that was significantly downplayed in the affidavit and application seeking a wiretap on John That Luong's phone, filed on February 20, 1996. (Id.) More specifically, defendants contend that Reth provided information about the structure of the organization and the alleged crimes committed by the members of the organization, the fact that Mady Chan co-founded the organization, and that Huy Chi Luong was Mady Chan's brother-in-law and a "main man" in the scheme. (Id.)

Special Agent Dupre did acknowledge Reth's cooperation with the government, but also stated that Reth could not provide information regarding drug trafficking[5] or the organization as a whole. Additionally, because Reth had been arrested, he would not be able to continue to infiltrate the organization and provide information about future criminal activity. Therefore, Agent Dupre's statements did not omit Reth's existence or mislead the court about the extent of assistance Reth provided.

---

[5] This court previously found that the only statement Reth made to the government regarding drug trafficking was as follows: "'Johnny' and 'Jimmy' work together under 'John'--may have people dealing coke." Hoang Ai Le, 255 F. Supp. 2d at 1136 n.4.

14

1         Defendants further contend that, unless the goals of
2 the wiretaps were so broad as to be impossible to meet, the
3 objectives of wiretapping were met by December of 1995 when the
4 government had identified the bosses of the organization and
5 their mode of operation.  (Def. Mady Chan's Mot. Suppress Wire
6 Intercepts 11.)  However, in response to the same argument
7 brought by another defendant, this court previously found that,

> Although the government may have known the
> identities of the bosses of the conspiracy
> and how they operated by 1996, it does not
> necessarily follow that the government's
> statements that electronic surveillance was
> falling short of its investigative goals
> were false.  The stated investigative goals
> of the 1996 wiretaps went beyond the mere
> identification of the leaders of the
> conspiracy and included, among other things,
> "the identification of other co-conspirators,
> aiders and abetters who are acting in concert
> with the subjects of" the applications.

Hoang Ai Le, 255 F. Supp. 2d at 1153.  Thus, the fact that the
government knew the bosses of the organization does not indicate
that they knew the identities of all, or even most, of the co-
conspirators.  Moreover, because the conspiracy itself was far-
reaching, the fact that the government's goals for wiretapping
were broad is not surprising.  The government conducted
wiretapping pursuant to its initial order and requested
extensions with applications supported by detailed affidavits and
presented in a timely fashion, all of which were granted by this
court.

        Defendants additionally argue that if evidence of money
laundering received from wiretapping was presented to the grand
jury through the testimony of a law enforcement or investigative
officer, the government was required to have the testimonial use

15

of the evidence authorized by a judge.  See 18 U.S.C. § 2517(5). The government may make an application for authorization of the use of such evidence either prospectively or retrospectively, so long as such application is made as soon as is practicable. Petti, 973 F.2d at 1446.  The purpose of this requirement is to prevent the government from using the original application for wiretapping as "subterfuge" and obtaining information through wiretapping for a crime which they would otherwise be unable to investigate through wiretapping, for lack of probable cause. United States v. Barnes, 47 F.3d 963, 964 (8th Cir. 1995).

The potential for such abuse is a matter of concern, but such potential was not present here.  Because evidence of money laundering was part and parcel of the larger drug conspiracy, money laundering did not fall within the definition of "other offenses" for which the procedure outlined by § 2715(5) is required.  See United States v. Homick, 964 F.2d 899, 904 (9th Cir. 1992) ("Because the [wire fraud offense not mentioned in the wiretap application] arose out of and was closely related to one of the original crimes specified in the wiretap application, we are not convinced that the wire fraud offense falls within the 'other offenses' provision of the statute.")

Moreover, even if the government failed to obtain court authorization for disclosing such evidence, the proper remedy is not suppression of the evidence.  Barnes, 47 F.3d at 965.  "[T]he statute does not provide for suppression for illegal disclosure, only for illegal interception."  Id. (citing 18 U.S.C. § 2518(10)(a)).  The court in Barnes held "that the only statutory remedy for improper disclosure is a suit for civil damages, not

16

suppression." Id. (citing 18 U.S.C. § 2520; <u>United States v. Cardall</u>, 773 F.2d 1128, 1134 (10th Cir. 1985); <u>United States v. Cox</u>, 462 F.2d 1293, 1302 (8th Cir. 1972) (remedy for failure to minimize wiretapping was a civil suit under § 2520)). Therefore, even if the government disregarded the proper procedure for presenting evidence of money laundering, suppression of the evidence is not the remedy for that omission.

Finally, defendants ask the court to reconsider its prior ruling that defendant Huy Chi Luong is estopped from challenging the wiretap evidence in this case, pursuant to an order by Judge Patel of the Northern District of California denying Huy Chi Luong's previous challenges to the wiretap order. The relevant legal standard directs that a motion for reconsideration be denied, "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, . . . clear error [was committed], or . . . there [has been] an intervening change in the controlling law." <u>389 Orange St. Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir. 1999). Here, defendants' motion to reconsider the finding of collateral estoppel is founded on seven allegations in total, only two of which may possibly fit under the standard for reconsideration.[6]

The first of these arguments is that because <u>United</u>

---

[6] In addition to the arguments laid out in the text, defendants also argue that, based on reasoning in an Eleventh Circuit case decided in 1992 that was not cited to in the original collateral estoppel briefs of either party, collateral estoppel is unwarranted. That is case is not binding on this court and was not before the court in the previous motion, so it cannot support a finding of clear error. Additionally, the case does not constitute "an intervening change in the controlling law," so it will not support reconsideration of the court's ruling of collateral estoppel.

17

1  States v. Blackmon, 273 F.3d 1204 (9th Cir. 2001), was decided
2  after Judge Patel's ruling, there has been "an intervening change
3  in the controlling law."  However, the court in Blackmon held
4  that boilerplate language explaining why traditional
5  investigative methods are insufficient cannot establish necessity
6  for a wiretap, without more.  273 F.3d at 1210-11.  Blackmon
7  contemplates a situation different from that in this case, where
8  the government provided detailed information about the
9  feasibility and drawbacks of traditional investigative methods
10 with respect to the individual defendants against whom wiretaps
11 were sought.  Therefore, Blackmon is not on point or controlling,
12 and cannot support a motion for reconsideration.
13         The second argument is that defendants discovered new
14 evidence after Judge Patel's ruling; namely, an interview of
15 Reth.  (Def. Mady Chan's Mot. to Suppress 17.)  "In the Ninth
16 Circuit, the party seeking reconsideration based on
17 newly-discovered evidence must show the evidence: (1) is truly
18 newly-discovered; (2) could not have been discovered through due
19 diligence; and (3) is of such a material and controlling nature
20 that it demands a probable change in the outcome."  United States
21 v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 n.45 (E.D.
22 Cal. 2001).  As discussed supra, however, any problems with
23 Reth's testimony are not of such a material or controlling nature
24 that the outcome of this motion has been affected.  Therefore,
25 this ground for reconsideration is also insufficient, and the
26 court will not reconsider its previous finding that defendant Huy
27 Chi Luong is collaterally estopped from re-litigating the issues
28 contained in Judge Patel's order.

18

IT IS THEREFORE ORDERED THAT defendants' motion to suppress wiretap evidence be, and the same hereby is, DENIED.

DATED: February 2, 2006

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

19